**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ROY SCHOENHOLTZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY, *an Indiana corporation*,<br><br>Defendant. | <u>**CLASS ACTION COMPLAINT**</u><br><br>Case No.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Roy Schoenholtz ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Twin City Fire Insurance Company ("Defendant") and alleges as follows:

**INTRODUCTION**

1.      This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promise to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** is a copy of Plaintiff's Policy ("Policy").

3.      Defendant violates its straightforward contractual obligation by directing its third-party vendor to systematically reduce the total loss valuations. Specifically, Defendant's third-party vendor determines the ACV of an insured total loss vehicle by comparing the for-sale price

1

of "comparable vehicles" in the relevant market. **After** the vendor determines the price for "comparable vehicles," however, Defendant instructs its vendor to apply an arbitrary, baseless, and illegal "projected sold adjustment" reduction to each comparable vehicle. This reduction artificially reduces the ACV calculation of the total-loss vehicle and, consequently, reduces the amount of Defendant's total loss payment to insureds.

4.      Defendant's deceptive, fraudulent, and unfair scheme violates Mo. Rev. Stat. § 407.020(1), *et seq*., and constitutes a breach of contract and breach of the covenant of good faith and fair dealing.

5.      As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of the bargain, and thus sustained actual damages.

6.      By this action, Plaintiff, individually and on behalf of the Class, seeks damages and injunctive and declaratory relief.

## PARTIES

7.      Plaintiff Roy Schoenholtz is and was domiciled at 22 Long Branch Ct. St. Peters, Missouri 63376 and was a Missouri citizen at all times relevant to this lawsuit.

8.      Defendant is and was, at all relevant times to this lawsuit, an Indiana company authorized to underwrite insurance in the State of Missouri, with its principal place of business being 501 Pennsylvania Parkway, Ste 400, Indianapolis, IN, 46280.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Missouri, and makes its insurance products and services available to Missouri residents. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in

substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Missouri, and Defendant is a citizen of Indiana, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiff seeks an award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA").

11.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTUAL ALLEGATIONS

**Defendants' Systemic Application of Projected Sold Adjustments**

12.     On December 2, 2018, Plaintiff was involved in a car wreck and sustained physical damage to his vehicle. At the time of the car wreck, Plaintiff was contracted with Defendant for automobile insurance through a policy underwritten by The Hartford.

13.     Like all members of the putative Classes, Plaintiff made a property damage claim to Defendant.

14.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's

3

vehicle to be a total loss and purported to offer him the ACV of his loss vehicle, as promised and represented it would under the uniform provisions of the Policy and Missouri law.

15.     When calculating the valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless whether it involves first-party or third-party claimants. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on February 6, 2018. *See* Exhibit B.

16.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 10.

17.     In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, negative Projected Sold Adjustments in the amounts of $1,384.00, $1,263.00, $1,385.00, -$1,037.00, $1,362.00, $1,615.00, $1,233.00, $974.00, $1,289.00, respectively, were applied to nine of the ten comparable vehicles considered by the Mitchell report. Exhibit B at pp. 5–9.

18.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold

4

Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 10.

**Defendant's Projected Sold Adjustments are Deceptive, Unfair and Invalid.**

19.    Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what it says it will do – pay ACV. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." *Id.*

20.    In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping. Before the ubiquity of online advertising and shopping, "advertised" prices had very little to do with eliciting car buyers to particular dealerships—instead, car buyers generally went to their local used car dealership that had the desired vehicle in stock for sale. The "advertised" price was simply whatever price was listed on the physical window. And consumers could not, as they can now, easily compare that price to Internet advertisements of the same vehicle offered by competitors.

21.    As such, dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales. This above-market "window" price \ allowed for negotiation, and a downward negotiation often occurred.

5

22.     But during the Class Period, that is simply no longer how the used car market operates. Now, given the need for Internet advertising, the prevalence of Internet shopping and consumer behavior, developments in sophisticated pricing software universally used by car dealerships, and the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships, used car dealerships no longer price vehicles above market with room for—and the expectation of—negotiation. Instead, car dealerships use sophisticated pricing software—which provides the advertised prices of all competitors; the average "turn" of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now price vehicles to market and do not negotiate from that price.

23.     This makes sense because if a car dealership priced a vehicle above market with room for negotiation, consumers would simply avoid that dealership. Consumers can easily compare advertised prices and would seek out the vehicle priced to market, rather than the same vehicle priced at a higher amount (i.e., above market). Given the choice between paying less or paying more for an identical vehicle, consumers will choose to pay less.

24.     As such, a negotiated discount off the cash price is highly atypical and is improper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly wrongful in the context of this action—insureds who have suffered a total loss of their vehicle and need a replacement have limited time to search out the illusory opportunity of a below-market deal Defendant assumes always exists without explanation or support.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using

comparative methodology but improperly deviates from that process by thumbing the scales in favor of reducing claim amounts to the detriment of insureds. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, however, Defendant abandons the comparative methodology and applies adjustments antithetical to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the considered price based upon undocumented and unverifiable assumptions.

26.     Defendant likewise tilts the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but does not influence the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

27.     Until July 2021, Defendant excluded from the calculation of the Projected Sold Adjustment all transactions in which the list price of a vehicle equated to the sold price.

28.     Even after July 2021, Defendant still excludes transactions in which the list price of a vehicle equals the sold price.

29.     Defendant has excluded and continued to exclude from the calculation of the Projected Sold Adjustment all transactions in which the sold price of a vehicle is greater than the list price.

30.     Without having performed any investigation or study, Defendant simply assumes

all such transactions are anomalies.

31.     Furthermore, Defendant has not exercised even a modicum of curiosity to investigate whether market realities support the application of a Projected Sold Adjustment. Nor does Defendant or its vendors attempt to verify for those transactions where the advertised price exceeded sold price, whether the reason for the reduction was negotiation of the cash price of the vehicle and not some other (far more likely) reason, some of which are discussed herein.

32.     Neither Defendant's form Policy nor Missouri law permit reducing a vehicle's value for invented or arbitrarily assumed justifications.

33.     Moreover, the accuracy of Defendant's data is, at best, suspect, as it contains a significant number of transactions where the advertised date in the database comes *after* the sold date. As a matter of simply chronology, it makes no sense to advertise a vehicle after it is sold. But here, too, Defendant makes no effort to control for this obvious flaw in the data.

34.     These irremediable, and unjustifiable, errors, of course, skew the data in favor of Defendant to the detriment of the insureds.

35.     Moreover, examples abound demonstrating the glaring error of Defendant's cherry-picking practices.

36.     For example, related to the exclusion of sales prices greater than list prices, advertised prices for comparable vehicles listed in Defendant's valuation reports are scraped from Internet sources—specifically Cars.com, Autotrader.com, Vast.com, and TrueCar.com.

37.     The advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in. Thus, a consumer who was not financing the vehicle through the dealership and/or who was not trading in a vehicle— obviously, insureds who sustained a total loss are not trading a vehicle when purchasing a

8

replacement vehicle—would have to pay in cash *more* than the price listed on sources where Mitchell scrapes advertisements for comparable vehicles. In determining the actual ***cash*** value of Plaintiff's and class members' totaled vehicles, there is no justification for Defendant to have excluded those transactions from calculating the Projected Sold Adjustment, while only including transactions where the sold price was recorded as less than the list price.

38.     Simply put, there is no justification for Defendant to exclude such transactions as outliers or mistakes when justifying the calculating the amount of the so-called Projected Sold Adjustment.

39.     Doing so serves only to skew the data to meet Defendant's unjustified, unsupported, and uninvestigated assumption that the list price of comparable vehicles should always be reduced to pay insureds and claimants less.

40.     Defendant further fails to control whether the vehicle was purchased with discounts unavailable to the public (e.g., employee discounts).

41.     Defendant also fails to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the recorded "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

42.     In these instances, the ACV of the vehicle remains as price to market; the dealership simply transferred the anticipated profit through either the sale of an optional ancillary product or by reducing what it would have offered in trade-in value.

43.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies–CCC Intelligent Solutions–does not apply projected sold adjustments in

9

this manner. Instead, CCC Intelligent Solutions uses list prices.

44.     On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Defendant does not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Missouri while not subjecting California claimants to the same negative adjustments.

45.     Plaintiff and each member of the proposed Class were damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the ACV they should have received had Defendant applied proper methodologies and appraisal standards.

46.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for ACV. Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $1,154.20 higher, before adding the related increase in payments for applicable sales taxes.[1] To date, the full payment for Plaintiffs' claims has been unreasonably and wrongfully withheld.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23. The proposed Class is defined as follows:

> All Missouri citizens insured by Defendant who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that included a "projected sold adjustment" or similar adjustment.

---

[1] The dollar amount of Defendants' underpayment to Plaintiff was calculated as the difference in the "Base Value" without application of the improper Projected Sold Adjustments and the "Base Value" as calculated by Mitchell.

10

48.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition during this litigation.

49.     Class certification is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

51.     **Commonality.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.   whether Defendant's practice of applying a "Projected Sold Adjustment" when determining the market value of Class members' vehicles, and its failure to disclose same would deceive a reasonable consumer;

    b.   whether Defendant's practice of applying a "Projected Sold Adjustment" when determining the market value of Class members' vehicles would be considered material by a reasonable consumer;

    c.   whether Defendant's conduct breached its contracts with Plaintiff and the other Class members;

11

      d.   whether Defendant's conduct breached the covenant of good faith and fair dealing with Plaintiff and the other Class members;

      e.   whether Plaintiff and the Class are entitled to injunctive relief; and

      f.   whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

52.    **Typicality.** Plaintiff's claims are also typical of the other Class members' claims because Plaintiff and the other Class members were all similarly affected by Defendant's deceptive application of a deductive "Projected Sold Adjustment." Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

53.    **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom they seek to represent, and Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

54.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would

be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.020(1), *et seq.*

55.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

56.     Plaintiff brings this cause of action individually and on behalf of the Class.

57.     The Missouri Merchandising Practices Act prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce..." Mo. Rev. Stat. § 407.020(1).

58.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated Mo. Rev. Stat. § 407.020(1) by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "Projected Sold Adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

59.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "Projected Sold Adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

13

60.     Defendant's unfair or deceptive acts or practices, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "Projected Sold Adjustment" to comparable vehicles in order to reduce the amount of Defendant's ACV payment to its insureds.

61.     The facts regarding Defendant's application of an arbitrary "Projected Sold Adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

62.     Plaintiff and the Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and the Class members did not, and could not, unravel Defendant's deception on their own.

63.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under Mo. Rev. Stat. § 407.020(1) in the course of its business. Specifically, Defendant owed Plaintiff and the Class members a duty to disclose all the material facts concerning its application of an arbitrary "Projected Sold Adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

64.     Plaintiff and the Class members were aggrieved by Defendant's violations of Mo. Rev. Stat. § 407.020(1) because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "Projected Sold Adjustment" to comparable vehicles, including that the "Projected Sold Adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's ACV payments under the Policy.

65.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding arbitrary "Projected Sold Adjustments" to comparable vehicles.

66.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased insurance coverage from Defendant, or would not have paid the same price for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

67.     Defendant's violations of Mo. Rev. Stat. § 407.020(1) present a continuing risk to Plaintiff and the Class members.

68.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of Mo. Rev. Stat. § 407.020(1) and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under Mo. Rev. Stat. § 407.020(1).

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

69.    Plaintiff incorporates by reference each allegation set forth in paragraphs 1–54.

70.    Plaintiff brings this claim individually and on behalf of the Class.

71.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

72.    Plaintiff's and each of the other Class members' insurance contracts are governed by Missouri law.

73.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

74.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

75.    Defendant, however, failed to pay the ACV of Plaintiff's and the Class members' vehicles because Defendant applied an arbitrary and capricious "Projected Sold Adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's ACV payment to insureds.

76.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

77.     As a result of these contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

78.     All conditions precedent have been satisfied.

### THIRD CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

79.     Plaintiff incorporates by reference each allegation set forth in paragraphs 1–54.

80.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

81.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

82.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including its obligation to determine the ACV of an insured's total loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its ACV payment to insureds, as alleged herein.

83.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a.    Intentionally applying "Projected Sold Adjustments" to undervalue comparable vehicles, and, in turn, total loss claims payments to insureds;

      b.    Failing to pay insureds the actual cash value of their total loss vehicles;

      c.    interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the retail market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and

      d.    Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

84.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of "Projected Sold Adjustments."

## FOURTH CAUSE OF ACTION

## DECLARATORY JUDGMENT

85.     Plaintiff incorporates by reference each allegation set forth in paragraphs 1–54.

86.     A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

87.     Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

of Missouri law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by "Projected Sold Adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

88.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

89.    As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgment in Plaintiff's favor and in favor of the Class as follows:

A.    An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.    An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.    Disgorgement of Defendant's profits;

D.    Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant described herein;

E.      An award of Plaintiff's and the Class' costs of suit, including reasonable attorneys'
fees as provided by law; and

F.      An award of such further and additional relief as is necessary to redress the harm
caused by Defendant's unlawful conduct and as the Court may deem just and proper under the
circumstances.

Dated: July 22, 2022                          Respectfully submitted,


                                              By: */s/ Andrew J. Shamis*
                                              Andrew J. Shamis, Esq.
                                              **SHAMIS & GENTILE, P.A.**
                                              14 NE First Avenue, Suite 705
                                              Miami, Florida 33132
                                              Telephone:  305-479-2299
                                              ashamis@shamisgentile.com


                                              **NORMAND PLLC**
                                              Joshua R. Jacobson
                                              *Pro Hac Vice* forthcoming
                                              3165 McCrory Place, Suite 175
                                              P.O. Box 140036
                                              Orlando, Florida 32803
                                              Telephone: 407-603-6031
                                              Fax: 888-974-2175
                                              josh.jacobson@normandpllc.com
                                              ean@normandpllc.com

                                              ***Counsel for Plaintiff***
                                              ***and the Proposed Class***